Our second case today is United States v. Long, number 1943-25. Ms. Albrow. Good morning, your honors. May it please the court, I'm Kimberly Albrow here on behalf of the appellant, Mr. Long. And you're the public defender in South Carolina. I am an assistant federal public defender in South Carolina, that's correct. Good to have you with us. Thank you, sir. There were several issues raised over the course of this case, which has been pending for some time, but I'm going to start with the probably the most direct way and possibly dispositive way that the court could resolve this case, and that involves the standard condition of supervised release number one that was imposed in this case. Mr. Long submits that there was an inconsistency between what the court told him at his sentencing and then what appeared in his written judgment. And this is an issue that has come up numerous times in South Carolina cases because for some reason at oral sentencing, it seems that the court imposes a supervised release condition telling the defendant he needs to appear within 72 hours at the probation office in the district to which the defendant is released. But then when the written judgment comes out, the supervised release condition indicates that he should report to the judicial district where he is authorized to reside. And if everything, just for purposes of supervised release condition one, are as the government says and based on SISN, that when the court says mandatory and standard conditions are imposed, and that means the guidelines standard conditions, then what purpose would it serve for the district court to read only one of those conditions and change the place where he's to report? It doesn't make any sense other than the court means something different. Therefore, the inconsistency arises. And just in June, this court in Williams, Clyde Williams put it this way, where the description of a condition is in an oral sentence, does not match the description of that condition in the written judgment, that error alone is a reversible Rogers error. And it was this exact condition at issue written exactly the same way. So Williams is- So what you're arguing is your Rogers issue, but there are two facets to it, right? Correct. There are two facets to it. I started with the one that I thought would be more easily resolved by the court. On where he is to report, it's about the location or something. Right. This is about his location. This standard condition one, which in the guidelines and in Mr. Long's PSR was written one way. The court changed that and told him to report to the district to which he is released. And then when the written judgment came out, it went back to the standard language from the guideline, which is you're to report- It's a variance. It's an inconsistency. And I think with that inconsistency through Rogers, Singletary, even Sisson, if there is an inconsistency, and then based on this unpublished Williams case, which deals with the exact same condition, I believe the court could easily resolve this and send back for a full re-sentencing because of the inconsistency. And that is completely in line with Rogers and Singletary. The government did cite some cases in one of its 28 J letters filed over the past week about other cases where the court seems to hold that the written judgment is just a clarification. But in all of those cases, which were Ashford and Covington and Chance, I believe were the cases, the opinions themselves say that the court during the oral pronouncement of sentence referred to the guidelines, 5D1.3. That did not occur in this case. So there isn't that kind of inconsistency where the written judgment here in Mr. Long's case clarifies what was said at sentencing. It is a completely- It's a complete discrepancy and it's inconsistent. So it would fall within the realm of Rogers where it should be sent back for re-sentencing. And I would also just address that the government- So the government concedes that this is a Rogers error and should be sent back for re-sentencing? No, the government- Well, then we'll just go- I apologize. No, the cases that they cited, it's in their ECF-73, one of the 28 J letters. Yes, yes, yes. They cite several cases where the court, in unpublished opinions, where the court has cited that it's just a clarification so that the case can be sent back down and just the judgment amended. But Mr. Long submits that's not what occurred in his case. His case is not just a clarification because nowhere during his oral sentencing did the court mention the guidelines at issue or say, well, you have to report where you're authorized to reside and then inconsistently say to which the defendant- excuse me, where the defendant is released. So it was one way at sentencing in a different way in the written judgment such that it falls within Rogers and single therapy. Well, tell me, I don't know that I understand this. There's a case called Sisson. Does that preclude your argument? It does not. Because Sisson actually noted that although this issue was raised with the inconsistent condition about where to report when released from the BOP, Sisson did not raise a rebuttal to the government's argument. Therefore, it left that issue open. And again, in June 2023, which I think is the most recent case post-Sisson to address this was Williams. And Williams held that this inconsistency is a lone reversible Rogers error. It's unpublished, but I think that's pretty persuasive from the court on that issue. And I would just address the other issue raised by the government is that they cited to a lot of BOP guidelines and standards, but there's nothing in any of those regulations from the BOP which explain what this term the district to which the defendant is released means as opposed to the judicial district where the defendant is authorized to reside. So none of that really clears up the inconsistency in any way. And it's not clear why the BOP's guidelines on how they release prisoners or where they release prisoners would have any bearing on the court imposing sentence. So Mr. Long submits that that issue alone could resolve this case if the court agrees with Mr. Sisson's position that it's an inconsistent Rogers error. What about the discretionary conditions that weren't mentioned? The discretionary conditions? They're swallowed up by the remand and then be taken care of? Well, the position, the question is did Sisson present to all defendants a bright line rule such that if the court says we're imposing mandatory and standard conditions, that's sufficient to impose the guideline conditions. I would agree that Sisson could be read that way, but in Mr. Sisson's case, I mean, excuse me, Mr. Long's case, the court only said we're imposing the mandatory and standard conditions, and the court did not reference the guideline U.S. Sentencing Guideline 5D1.3, which does list the standard conditions. It only listed the statute 3583D, which is where the mandatory conditions are found. Now, it does give the court great broad discretion to impose other supervised release conditions, but it doesn't list any of those conditions. It only says that the court has broad discretion to issue other supervised release conditions on a case-by-case basis. And it didn't do that here? Right. It just, all the court said was... My mistake was that was a bigger problem than this thing about where he's going to report. Well, I would agree that that is insufficient, but it depends on how you read the Sisson case, because Sisson did say in their case that pointing to the standard conditions was sufficient in South Carolina, because South Carolina doesn't have these other standard conditions like some districts in North Carolina have. But I would note that Sisson also said that, well, first of all, the district court here does not mention the PSR. It doesn't mention the guidelines where the standard conditions are listed, and it only says standard conditions. So Mr. Long would have to have assumed that the standard conditions referred to were what were listed in the guideline and the PSR and didn't mean some other conditions, which the court has discretion to impose under 3583D, because the only thing cited was 3583D in connection with imposing this mandatory... Why don't the lawyers at the sentencing help the court go through the litany of this, the steps, and get these things straightened out on the record and in the judgment? Well, I think that... In view of this Rogers case. A lot of these cases... Mr. Long's case has been pending for quite some time. It's a 2018 case. I was a prosecutor a long time ago. We used to stand up and say, Judge, I don't know if you're a defense lawyer. You haven't covered everything here. Right. Well, I can't speak to why it wasn't done before, Rogers. But you recognize the lawyers have some responsibility too. Yeah, sure. Maybe not the defense lawyer. Maybe you're looking to trap them. But I don't know. Prosecutors certainly should. Yes. All Mr. Long is relying on is the decision in Rogers, which made this... They cited a case this morning that we came up with yesterday. Moore. Yes, Your Honor. That case, I believe, is... I did get that once I arrived in Richmond last night. Um, that case was distinguishable. We just vacated another case. That's right. Right. But we did on Rogers yesterday. A different panel. In... So, um, anyway, that's Mr. um... They say that's distinguishable, I guess. Right. And so Mr. Long and some relies on Rogers and Singletary. And he doesn't believe that enough was said to point him to what standard conditions was imposed. But even if the court finds that Sisson presented this bright line, we're listing the... Just saying we're imposing the mandatory standard conditions is enough. The inconsistency between where to report after he gets out of the BOP is enough for reversible Rogers error. Well, if you win today, what does your client get at the end of the day? Well, pursuant to Rogers, he gets the right to be present at sentencing and get to hear the reasons for all the conditions imposed on him. Because as Rogers recognized, even if something is listed as a standard condition, that's not appropriate in every single circumstance. So he might have a circumstance where he would like to argue against having one of those standard conditions imposed on him. And it just goes to the fundamental right of him being present for his sentencing. Allocution? No, just for the... Some of these cases have talked about allocution, that they've been deprived of allocution. Well, this is more that he was imposed... These conditions were imposed on him after the fact. What's the public trial? It's not denial of the public trial? No, just that he has the right... We're going to extremes here. Yes, earlier we had a case involving mandatory life sentences. And now we're arguing about whether the judgment order comports with what was said at the hearing. Right. And then the other issue that Mr. Wong raised, and again, like I said, this case has been pending for a while, it goes to the U.S. versus Campbell issue, which there has been a lot of activity and a lot of cases that have issued post-Campbell that makes this area of law fairly confusing. Mr. Wong submits that 4453, 445... Campbell is a West Virginia statute. It is a West Virginia statute, and it's defined exactly like the South Carolina statute. And there was an unpublished case, Jackson, that was on a different South Carolina statute, 44-53-375, which isn't at issue here, that held that... Then you had the Groves and Davis. Correct. And Groves and Davis focused on attempted transfer, as I think they had to, because Campbell held that if it was an attempted delivery, it was an inchoate crime and therefore not within the guidelines. South Carolina has a statute, state versus Brown, that plainly states attempted delivery is a distribution. So attempted delivery is at issue in this 445, which is at issue in Mr. Wong's case. And I would say the other distinction is that both Groves and Davis relied heavily on the fact that attempts were listed in those drug statutes. So it would be superfluous for an attempt to also be included in a distribution. However, South Carolina Code 44-53-445, the statute at issue in Mr. Wong's case, does not include that same attempt language. So for those reasons... And Davis was the South Carolina case. Right. And Jackson was which one? Jackson was also a South Carolina case. And Jackson was unpublished. Right. But none of the South Carolina statutes at issue... And it's referred to in Groves, in a footnote. Right. But the statute at issue here is different than Davis and Jackson. And I'm out of time. Thank you, Your Honor. Well, we appreciate it. Yeah. Ms. Stockton? Good to have you with us. Thank you, Your Honor. May it please the court. I'm Katie Stoughton on behalf of the United States. I'm happy to begin, as Ms. Albrow did, with the Rogers and Singletary issue. Just a couple of sort of housekeeping matters before I get there. Based on Sisson, we are withdrawing the argument made in footnote 4 of our brief that this claim and the Campbell claim were waived by not being raised until supplemental briefing. Sisson makes it clear that that's perfectly appropriate given the change in the case law. You're going to have to talk a little slower and a little more into the microphone. I heard all that, but I want to hear every word you say. Thank you, Your Honor. Also under Sisson, we are withdrawing our argument that these issues are reviewed only for plain error. We agree under Sisson that they are reviewed de novo. You withdrawing your... The plain error. You're changing your position this morning. Well, as we noted in the 28-J letter, Sisson makes clear that the standard of review is de novo. Not plain error, excuse me. I think in terms of the Rogers and Singletary issue, the threshold question that needs to be answered is whether the district court sufficiently orally incorporated the standard conditions under the guideline when it ordered Mr. Long to comply with the mandatory and standard conditions. If the court agrees with Mr. Long that it did not sufficiently incorporate those, then he's right. This just goes back for a re-sentencing and you don't need to reach the other issues. But we believe that Sisson makes clear that the district court's oral pronouncement was sufficient to orally incorporate those guidelines standard conditions. The district court did explicitly adopt the PSR. That's at JA 144 and 145. It said it was adopting the PSR for use in fashioning a reasonable sentence. And the PSR noted that those guidelines standard conditions would apply. And then the court orally ordered Mr. Long to comply with the mandatory and standard terms or conditions of supervision, which under Sisson is sufficient because Sisson makes clear South Carolina has no other list of standard conditions. Mr. Long has not proffered any other list of standard conditions that may have applied. I mean, the only possibility here is that it was the guideline standard conditions incorporated in the PSR. In terms of the argument that the citation to 3583D somehow renders the oral incorporation insufficient, as Mr. Long points out, that statute doesn't incorporate any standard conditions. All it does is give the district court authority to impose those standard conditions. So 3583 does not undercut Sisson's point, which is that in South Carolina, there is only one set of possible standard conditions. We've cited several cases in our 28-J letter, Wright and Chance and Johnson. I do just want to point out on the facts that two of those are exactly what happened in this case. The court said in Chance, you are ordered to comply with the mandatory and standard conditions of supervision outlined at 18 U.S.C. 3583D. That's at JA 290 and 91 of the Chance case. And the court said exactly that same thing in Wright. That's at JA 86 of the Wright case. So there are some South Carolina cases where the court more expressly incorporated the guidelines, but this court repeatedly has said what the district court did here is sufficient. I mean, we would ask the court to so hold under Sisson. So if the court agrees with the government that the guidelines conditions have been appropriately incorporated, then you get to the issue of whether there's an inconsistency in the condition about where the defendant should be reporting when he's released from the Bureau of Prisons. It is our position, as we argued in our brief in the 28-J letter, that there is no inconsistency between the standard condition, which orders the defendant to report to the district in which he's authorized to reside. Is there prior case law on that point? I feel like this has come up before. So it came up first in Jenkins, I think, and then in Sisson. There is no case law that has definitively resolved whether these are consistent or inconsistent. Well, is that because the defendant won? In other words, can we assume this is not objectionable because the government won, or did the defendant win? Do you understand if the defendant won on other grounds, then we can't make too much of this. We can't say that there has been any approval of it by this court. I would not say this court has approved it. But I also wouldn't say the court, other than in Jenkins and Williams, unpublished cases, has disapproved it. So the court just has never squarely resolved whether these are consistent. I think a broader point that I would like to draw out of the cases cited... Say again exactly what the court has never resolved, according to what you say. Yes. According to the government, what has the court never resolved? The court has never resolved whether the district to which a defendant is released is the same as the district in which the defendant is authorized to reside. So the court's never resolved whether the two conditions are the same or whether they're inconsistent. Is it the government's position that, in fact, those are always the same thing? Yes. And I've cited to some BOP policies and probation office policies. I mean, really that just comes from the BOP and the probation office saying, of course, they're the same. You are always supervised in the district where you're authorized to reside. Either you go back to your sentencing district or you are allowed to relocate to another district at which point your supervision is transferred to that district. And then you overlay that on top of the BOP policy that when you're released from prison, they transport you to wherever it is that you're going to reside. They don't just open the door and wish you well. And so practically speaking, from the BOP's perspective and from the probation office's perspective, it doesn't make sense that the court would be ordering defendants to walk out of the prison and go straight to the probation office in that district only to then transport them to wherever it is that they're going to live and where they're going to be supervised. So it's more of a practical argument, but I think to sort of pull back from the cases cited in the 28J letter and all of these policies that I've cited to, my bigger point is this wasn't a mistake on the district court's part. It wasn't an accident. As Ms. Alvarez said, in every single one of our sentencings until Jenkins, this is what the district court was ordering. I found additional cases, one from the circuit out of Maryland, one from the fifth circuit out of Texas where the courts were doing the same thing. It's because at the district court and at the probation office and at the BOP, it was understood that these meant the same thing. It wasn't that for years and years. You say BOP, you're talking about the Bureau of Prison. Yes, your honor. Which is part of the Department of Justice. Yes, your honor. And so for years, that's what the courts were ordering people to do. And they weren't ordering people to report to two different places. They were just saying the same thing in two different ways. So it is a government- Maybe they should explain it. Well, until Jenkins, no one ever asked them to. And now they don't do it anymore. We fixed it. So it's- But now what do they do? They just incorporate the guideline standard conditions, the district to which you're authorized to reside. So assuming that the district court, or that this court agrees the district court sufficiently incorporated the standard conditions, which refer to the district of residence, but disagrees with the government, that there's no inconsistency here, we would ask the court to look at the cases that we cited in the 28-J letter, Ashford, Covington, Chance, and Wright. Fully acknowledge that we did not raise this argument in our brief. It's been waived. We would ask the court to excuse the waiver based on system. This is a lot of cases that developed well after briefing was completed in this case. But if the court both orally imposed the standard conditions, which would mean it ordered him to report to the district in which he resides, and it told him to report to the district to which he's released, and those are two different things, which of course we disagree with, then the oral pronouncement of the sentence is ambiguous. The court has ordered two different things. And under Rogers and this line of cases, the court can look to the written judgment to clarify that oral pronouncement, the written judgment making clear that the court intended to order the defendant to report where he's currently residing. Now who writes the, you call it the written judgment, that's the one that's called the criminal judgment from which the appeal is taken. The clerk writes that up, or who writes it? I'm actually not sure whether it's the clerk or the probation office. It's not written by the judge or the judge's law clerk or the United States attorney. In my experience, it was written by the clerk's office. I think that's correct, your honor. It's certainly not by the U.S. attorney's office. So all we're trying to do is get everybody on the same page here, I guess. Yes, and like I said, I do believe post-Jenkins that we are all on the same page. It's just unfortunately we've got a lot of older cases still pending up here, and this issue is going to keep coming up because it's not yet been resolved. I don't mean to sound flippant about this. All this stuff seems to be a colossal waste of time. I mean, why can't the two sides, all you're talking about is the definition of reportable places. Why can't the government and the defense get together long before you come up here and resolve it? It's all these things seem really simple to me, but maybe not to you all. Well, it's been resolved, like I said, post-Jenkins in cases going forward. The problem is just the posture of this case. It was already pending on appeal at the time that Rogers and Singletary and Sisson were issued, and so Mr. Long is now arguing that it's a basis for a full de novo re-sentencing, and the government disagrees with that position. I fully acknowledge that he has a right to be present when his conditions are imposed, but he was present when these conditions were imposed. The court orally ordered him to comply with the standard conditions. It told him where he's to report when he's released from the BOP. He didn't ask any questions. He didn't express any confusion. He didn't object to any of that, and so we are going to continue to argue on appeal until the court tells us otherwise that these conditions are not inconsistent. At most, there's an ambiguity between what the court orally announced, and that's not a basis for a de novo re-sentencing under Rogers. And the only... It should sort of take the other side. If we should agree with the defendant here, he goes back and gets re-sentenced, right? There's no other remedy? Well, there's a potential other remedy, and I'm not sure it quite fits in this case, but the Moore case that came out yesterday, the unpublished case that I cited to, if the court finds there's an inconsistency between the oral pronouncement and the written judgment, the Moore slot of cases, which dates back, I think, to 1965, says the proper remedy is to remand to conform the written judgment to the oral pronouncement of the sentence. The problem you have here is if you're going to find they're truly inconsistent and not just ambiguous, I think you necessarily have to first find the guideline conditions were not orally imposed. Which would lead to a de novo re-sentencing under Rogers, if that makes sense. If the court has no further questions on the Rogers... And for that proposition, you were citing a 1965 Fourth Circuit case. Yes, Your Honor, Morris. That was... It was called Morris? This is the Moore case. M-O-R-S. That was a Moore case. It's unpublished and it's yesterday. Yes. But it cites a 1965 case, right? Yes, Your Honor. And what's the name of that one? Morris, M-O-R-S-E. Morris, yeah, all right. If the court has no further questions on the Rogers and Singletary issue, I'm happy to briefly address the Campbell issue. That's a footnote in Morris in 1965. Who wrote that? I don't recall, Your Honor. I apologize. I'm not quite as familiar with the court that far back. To the extent there's a conflict between this written order and the oral sentence, the latter is controlling. Yes. And that's what... Was that a quote from the district court? Or the word, this written order, indicates to me that's what the district judge said. That's what the Fourth Circuit said referring to... But the Fourth Circuit said... They said this district order. Yes. This written order is talking about the Fourth Circuit order? It's talking about the district court's written order. But it says this written order. Right. The Fourth Circuit is referring to the district court's written order. And that's footnote one. That's ambiguous then. That opinion. In terms of whether Mr. Long's marijuana distribution conviction is still a career offender predicate, it's our position that Davis resolves this issue. It held that attempted transfer under South Carolina law is a completed distribution, not an attempt offense. Davis analyzed the exact same definitions of distribute and deliver that are at issue in Mr. Long's case. Those arise under 44-53-110. And Davis held that distribution is a completed offense, notwithstanding that, as Mr. Long points out, distribution incorporates the definition of deliver, which incorporates the attempted transfer of a drug. Two points in response to Ms. Alvarez's argument this morning. Davis relies expressly on the state court of appeals decision in State v. Brown. To support its conclusion that no completed sale is required to complete a distribution, State v. Brown says the criminal act of attempt to transfer constituted a delivery under the act, which in turn was a distribution. So we believe that Davis correctly interpreted State v. Brown that although inchoate conduct and attempted transfer can be a delivery, that means the delivery is completed and not the delivery or the distribution is itself an inchoate offense under Campbell. And then as to the point that the particular state statute at issue here does not incorporate attempt offenses, that's not any reason to find that the meaning of distribute under 44-53-110 is different under this statute than it is for the other South Carolina drug statutes. Just by way of background, there are really three operative drug statutes in South Carolina. There are two substantive offenses, 44-53-370 and 375B, that make it illegal to manufacture, distribute, dispense, deliver, or purchase, or aid, event, attempt, or conspire, or possess with intent to distribute one of those things. So those two statutes do separately codify attempt. The only difference between them is that one, the one at issue in Davis specifically deals with cocaine-based and methamphetamine. The other deals with all other drugs. And then you have the third statute, which is at issue here, section 445, and all 445 does is add a locational element to the offenses in 370 and 375. All three statutes define, distribute, and deliver exactly the same manner. It's the same definitions under 44-53-110 that govern. And so there's just no reason to conclude that that definition of distribute is somehow different for one of the drug statutes than it is for the other two. In the State Court of Appeals decision, State v. Watts, the court held that the elements of distribution under the statute at issue in Davis and distribution under the statute at issue here are the same, the statute at issue here just adds the locational element. So distribution is the same. The South Carolina Court of Appeals has already said that. Instead of presuming, as Mr. Long asked the court to do, that distribute somehow means something different under one statute than it does under the other two, we would ask the court to presume that by excluding attempts from the statute at issue in this case, the General Assembly acted intentionally, it acted purposefully, and it meant to exclude attempts under 445. And so it's our position that there is no error under Davis and certainly no plain error that his distribution conviction was properly counted as a career offender predicate. Of course, if there were plain error, we would argue that there was no effect on the substantial rights based on the district court imposing an alternate variant sentence and indicating it would have imposed that sentence even if Mr. Long were not a career offender. We did argue in our brief that this claim is barred based on the appeal waiver. I understand in this case that, well, let me back up. The exception to the appeal waiver is for future changes in the law that affect the defendant's sentence. Based on Sisson and its explanation of what a change in the law means, we're not pressing the argument that Campbell wasn't a change in the law, but Davis makes clear that it certainly has no effect on the defendant's sentence. And so I understand here that you've got to get through the merits before you can make that determination, but we would ask the court to find that Campbell is not a change in the law that affects Mr. Long's sentence because his distribution offense is still a career offender predicate, even after Campbell. And thus, this claim is barred by the appeal waiver and should be dismissed. If the court has no further questions on that issue, I'm happy to address any of the other issues that Mr. Long raised. And if not, I will just rest on my brief and ask that the court affirm both Mr. Long's conviction and his sentence. So you're disavowing some of the waiver claims, is that right? Yes. Am I understanding that? That's correct. Can you run down the list of why? First, tell me why you're doing that. So based on Sisson's explanation of a change in the law, so before Sisson, we relied on White. Yeah, I'm sorry. You talk so fast. I'm so sorry. I can't understand what you're saying. It's me, I'm sure. I'm positive it's me. Before Sisson, we relied on White to say that the change in the law had to upend precedent in order to be a change in the law that would excuse a waiver. Sisson says that's not right. Okay. And so based on Sisson, we are not arguing anymore that Mr. Long has waived the Campbell or Rogers and Singletary claims for failing to raise them in his opening brief. And we are not arguing that Campbell was not a change in the law for purposes of our appeal waiver. We are arguing that it was not a change in the law that affected Mr. Long's sentence, which is what would be required to exempt him from that waiver. Okay. All right. And with that, we would just ask if the court affirmed- Did you, you talked about a 28-J letter and I haven't seen it. Is all this in your 28-J letter? Yes. How many 28-J letters did you file? There are several 28-J letters. How many? I think we filed four. Well, you've been talking about these 28-J letters if they're singular. So- And I know of a couple. On September 13th, we filed a letter based on Sisson in which we expressly withdrew the plain error argument based on Sisson. Okay. You don't have to go through them, but everything that you are conceding now that you didn't concede, that you made an argument for in your brief, you have sent us a 28-J letter on. Is that right? With the exception of- With the exception. The footnote four in our brief about the Rogers and Singletary and Campbell claims being raised for not being waived in the opening brief. That is not in a 28-J letter. So, I'm sorry. I'm going to go look and see. What is the footnote four issue? So, in footnote four of our response brief, we argued that- Footnote four of which response? Of the government's response brief. Not the 28-J letter. Right. Footnote four of the brief, we argued that Mr. Long had waived his Campbell and Rogers and Singletary claims because he didn't raise them until his supplemental brief. Yes, but now you're giving that up. Sisson makes clear that that is not correct. Okay. Thank you. Which page is the footnote four of it? I apologize, Your Honor. I found it. It's page 16. So, that's by the board? Yes. All right. Thank you. Thank you. Ms. Albrow? Thank you, Your Honors. Briefly in rebuttal, regarding the position on Rogers Singletary and how it affects this case, the government referred to the court explicitly adopting the PSR as support for these standard conditions being properly imposed. And I would note that on the JA-91, the court did refer to the PSR and they adopted its factual findings. That's all they did. They adopted the factual findings and said that it would use the PSR in fashioning an appropriate sentence. And I would note that even Sisson at page 193 said that PSRs do not have the force of law. So, it's not enough that the court say it adopts the factual findings in the PSR. It must adopt the PSR's recommendations on these supervised release conditions or they remain just that, recommendations. The court did not do that because as I indicated, when it imposed these standard conditions of supervised release, it didn't mention the PSR at all. Also, all the way back to the Rogers case, even in the districts in North Carolina where they have a standing order on supervised release conditions, Rogers pointed out that that does not relieve the district court from the obligation of explaining the supervised release conditions. And that's in Mr. Long's briefing that that was part of the Rogers claim that the supervised release conditions were not explained at all in Mr. Long's case. So, that contributes to the Rogers error present in this case. Moving on to the Campbell issue, Mr. Long disagrees with the government's position that all South Carolina Code 44-53, 445 does is add a locational element. It explicitly includes what's in the other two drug statutes, which is attempt offenses. And the reason that matters is because that is what is addressed in both Groves and Davis and how Groves and Davis tried to distinguish the issue from Campbell. One of the reasons was, as it said, as presented in Campbell, West Virginia did not argue and the government had conceded that there wasn't a separate attempt, that it didn't make it superfluous. So, it matters that 445 does not include an attempt offense because it distinguishes it from Groves and from Davis. And Mr. Long is not arguing that distribution has a different meaning in 445. What he is saying is that Campbell, to the extent that Davis is inconsistent with it or Groves is inconsistent with Campbell, Campbell is controlling because it was first in time. And what Campbell held was an attempt to deliver a controlled substance was the least culpable conduct under the West Virginia statute and that was an inchoate offense that the guideline commentary could not expand to include in the definition of controlled substance offense. And as indicated, State versus Brown, I don't know how it could be more similar, states plainly that attempted delivery is a distribution. Davis, although it dealt with the same statute as Jackson, referred only to attempted transfer, not attempted delivery. And as I indicated in the opening, I think that was intentional because Campbell addressed attempted delivery and held that that was an inchoate offense not included as a controlled substance offense. So, Groves and Davis specifically addressed attempted transfer. And South Carolina law holds that attempted delivery, not transfer, is a distribution. So, that makes a big difference. And unless the court has further questions, I'll cede my one minute of time. Thank you. Thanks very much. We appreciate the arguments of counsel. And rather than come down and greet you all, we're going to invite you to the bench and we'll greet you here. And then we'll take a short break. Chief Judge first. Good to have you with us. Good job. Nice to see you. Nice to have you. This honorable court will take a brief recess.
judges: Robert B. King, Diana Gribbon Motz, Henry F. Floyd